UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 05-31506 (LMW) |
| FRANCIS BIANCHINI, | ) | CHAPTER | 7 |
| DEBTOR. | ) | DOC. I.D. NOS. | 9, 13 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FRANCIS BIANCHINI,       )
                         )
       MOVANT            )
   vs.                   )
                         )
KEVIN RYAN,              )
                         )
       RESPONDENT.       )

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## **APPEARANCES**

| | |
|---|---|
| Frederick A. Dlugokecki, Esq.<br>Marjorie R. Gruszkiewicz, Esq.<br>Law Offices of Frederick A. Dlugokecki<br>175 Church Street<br>Naugatuck, CT 06770 | Counsel for the Debtor/Movant |
| John M. Barton, III, Esq.<br>Law Offices of John M. Barton, III<br>P. O. Box 901<br>Orange, CT 06477-0901 | Counsel for the Respondent Kevin Ryan |
| Kevin J. Curseaden, Esq.<br>Stevens, Carroll & Carveth<br>P. O. Box 432<br>Milford, CT 06460 | Counsel for the Respondent Kevin Ryan |

**MEMORANDUM OF DECISION AND ORDER**
**RE: DEBTOR'S MOTION TO AVOID JUDICIAL LIEN IMPAIRING EXEMPTION**

Lorraine Murphy Weil, United States Bankruptcy Judge

The matter before the court is the above-referenced debtor's (the "Debtor") Motion To Avoid Judicial Lien Impairing Exemption (Doc. I.D. No. 9, the "Motion")[1] pursuant to 11 U.S.C. § 522(f)(1)(A)[2] and the above-referenced respondent's (the "Respondent") objection (Doc. I.D. No. 13, the "Objection") thereto. The court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b), and that certain Order dated September 21, 1984 of the District Court (Daly, C.J.).[3] This memorandum constitutes the findings of fact and conclusions of law mandated by Rule 7052 of the Federal Rules of Bankruptcy Procedure (made applicable to this contested matter by Rule 9014 of such rules).

## I.    BACKGROUND

The Debtor commenced this chapter 7 case by a voluntary petition filed on April 4, 2005. On May 24, 2005, the Debtor filed his schedules and "Statement of Financial Affairs" (Doc. I.D. No. 7, collectively with the schedules, the "Schedules"). Schedule A (Real Property) states (among other things) that the Debtor owned as of the petition date a "[c]ommercial [p]roperty" located at 1074 Wolcott Street, Waterbury, Connecticut (the "Property") valued at $796,000.00 and subject to $934,000.00 in liens. (Doc. I.D. No. 7 (Schedule A).)[4] Schedule D (Creditors Holding Secured

---

[1] References to the docket of this case are in the following form: "Doc. I.D. No. ___." References to the transcript of the December 29, 2005 hearing (the "Hearing") on the Motion appear in the following form: "Transcript at _____."

[2] References herein to title 11 of the United States Code or to the Bankruptcy Code are references to the same as they appeared prior to the effective date of their amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

[3] That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceedings . . . arising in . . . a case under Title 11, U.S.C. . . . ."

[4] The Respondent claims that the Property has a value of $950,000.00 (*See* Transcript at 75 (testimony of the Respondent's appraiser).) Given the conclusions set forth below, it is not necessary for this court to resolve the valuation dispute.

Claims) lists the following liens on the Property: a first mortgage to NewAlliance Bank in the amount of $560,000.00; a second mortgage to Fred L. Dill, Sr. in the amount of $220,000.00; and a judgment lien held by the Respondent in the amount of $154,000.00 (*See* Doc. I.D. No. 7 (Schedule D).) Among other exemptions, Schedule C (Property Claimed as Exempt) claims an exemption with respect to the Property in the amount of $980.00 pursuant to Bankruptcy Code § 522(b)(2) and Section 52-352b(r) of the Connecticut General Statutes.[5] No objections were filed with respect to that exemption. The Debtor received his chapter 7 discharge on July 11, 2005. (*See* Doc. I.D. No. 15.)

The Motion seeks to avoid the Respondent's judgment lien (the "Lien") pursuant to Bankruptcy Code § 522(f)(1)(A).[6] The Objection argues (among other things) that the Debtor did not own the Property when the Lien became "fixed" within the meaning of Section 522(f). Thus, the Objection continues, the Lien is not avoidable under Section 522(f)(1)(A) pursuant to the Supreme Court's decision in *Farrey v. Sanderfoot,* 500 U.S. 291 (1991).

As noted above, the Hearing was convened on December 29, 2005. At the Hearing, the Debtor, his appraiser and the Respondent's appraiser testified and both the Debtor and the

---

[5]    Section 52-352b(r) makes exempt "[a]ny interest of the exemptioner in any property not to exceed in value one thousand dollars . . . ." Conn. Gen. Stat. Ann. § 52-352b (West 2006).

[6]    Section 522(f)(1)(A) provides in relevant part as follows:

(f)(1) [T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is —

(A) a judicial lien . . . .

11 U.S.C.A. § 522(f) (West 2005).

Respondent introduced documentary evidence into the record.[7]  Post-Hearing briefs have been submitted and the matter is ripe for decision.

**II.    FACTS[8]**

At all relevant times through August 27, 2002 record title to the Property was in the name of 23 Properties, a Connecticut Limited Liability Company (the "LLC").  The Debtor and his brother-in-law, John S. Kidwell, Jr., were the members of the LLC.  (*See* Debtor's Exh. 2, 4; Transcript at 19) (testimony of the Debtor).)  Some time prior to August 2, 2002, the Respondent commenced an action on certain promissory notes in the Superior Court of New Jersey against the Debtor, Mr. Kidwell, the LLC and certain other entities (collectively, with the Debtor, Mr. Kidwell and the LLC, the "Defendants").  On August 2, 2002, judgment (the "New Jersey Judgment") was entered in that action against all the Defendants in the amount of $94,200.00 plus fees in the amount of $23,483.55 and expenses in the amount of $3,016.45.  (*See* Debtor's Exh. 3.)[9]  The New Jersey Judgment as against Mr. Kidwell was based in part on the jury's finding that Mr. Kidwell was the Debtor's "agent or a 'straw man' for the purpose of taking title to . . . [the Property] held in the name of . . . [the LLC] . . . and assets of . . . [the LLC] . . . held in John S. Kidwell, Jr.,'s name shall be [sic] [used] to satisfy a debt of the corporation [sic] . . . ." (*Id.* at 2.)  The New Jersey Judgment as against the artificial entity Defendants (including the LLC) was based in part on the jury's finding

---

[7]    References herein to the Debtor's Hearing exhibits are in the following form: "Debtor's Exh. ____."  References herein to the Respondent's Hearing exhibits are in the following form: "Respondent's Exh. ____."

[8]    The facts found below and elsewhere in this memorandum have been taken from the record of the Hearing and this entire chapter 7 case.

[9]    Debtor's Exh. 3 is a certified copy of the New Jersey Judgment.  The New Jersey Judgment was entered after a jury trial.

that "the Defendant corporations [sic] were facades of [sic] alter egos for the operations of the . . . [Debtor] created to shield his assets or other unjust purposes, so that any judgment against . . . [the Debtor] . . . or any of the corporations [sic] should be used against all of them, and the assets of any one should be used to satisfy the assets [sic] of any other . . . ." (*Id.*)[10]  It is stipulated that the New Jersey Judgment became a Connecticut judgment and a valid judgment lien (*i.e.,* the Lien) on the Property as recorded in the Waterbury Land Records on August 27, 2002 (the "Fixing Date"). (*See* Respondent's Exh. D (Stipulation of Facts).)[11]  The Lien secured a judgment debt in the amount of $162,035.23 as of the petition date. (*See id.*)

On or about December 17, 2004, the LLC (by and through the Debtor as member) quit claimed title to the Property to Mr. Kidwell by a deed (the "First Deed") recorded in the Waterbury land records on December 20, 2004. (*See* Debtor's Exh. 2.)  On or about March 30, 2005, Mr. Kidwell (by and through the Debtor as Mr. Kidwell's attorney in fact) quit claimed title to the Property to the Debtor by a deed (the "Second Deed") recorded in the Waterbury land records on March 31, 2005. (*See* Debtor's Exh. 5.)  As noted above, the Debtor commenced this case four days later and claimed his interest in the Property as exempt under Bankruptcy Code § 522(b)(2) to the extent discussed above.

---

[10]   Judgment was rendered against all of the Defendants jointly and severally. (*See id.* at 2-3.)  However, judgment against Mr. Kidwell was "limited to . . . [his] interest . . . in the assets of . . . [the LLC and a certain other entity]." (*Id.* at 3.)

[11]   A copy of the Lien certificate is in the record as Respondent's Exh. E.  That document recites that the original thereof was received for record by the Waterbury Town Clerk on September 6, 2002. (*See id.*) *Cf.* Conn. Gen. Stat. § 52-380a(b) (judgment becomes a lien on recordation).  However, the court will use the stipulated date (which appears to be the date that a Connecticut judgment was issued on the New Jersey Judgment) as the Fixing Date.

### III. ANALYSIS

To prevail here, the Debtor must prove that the Lien became "fix[ed]" to his interest in the Property within the purview of Bankruptcy Code § 522(f)(1) (*i.e.*, that his interest in the Property preexisted the Lien). *See Farrey, supra*. If the Debtor were to rely on the Second Deed, the Debtor could not prevail. That is because the Second Deed conveyed title to the Property subject to the Lien. That state of facts does not constitute a "fixing" of the Lien to the Debtor's interest in the Property within the purview of Section 522(f)(1). *See Farrey,* 500 U.S. at 296 ("[U]nless the debtor had the property interest to which the lien attached at some point *before* the lien attached to that interest, he or she cannot avoid the fixing of the lien under the terms of § 522(f)(1).").

However, the Debtor looks to the initial recordation of the Lien in 2002 for the statutory "fixing" and argues that the New Jersey Judgment established that the Debtor owned the Property at the time of its issuance (and before the recordation of the Lien). According to the Debtor's theory the First Deed is not material because the New Jersey Judgment established that Mr. Kidwell's title to the Property was the title of the Debtor. The Debtor's theory continues that the Second Deed did nothing more than conform record title to the New Jersey Judgment. The court finds the Debtor's argument unpersuasive for the reasons that follow.

The Debtor argues that the New Jersey Judgment declared that he was the owner of the Property at the time of the issuance of such judgment and on and before the Fixing Date. The court does not thus construe the New Jersey Judgment. Rather, the court construes the New Jersey Judgment as determining that, under the circumstances then presented, the Respondent could disregard the state of record title of the Property and treat it as if the Debtor held record title to the extent necessary to satisfy that judgment. In that respect, the New Jersey Judgment is analogous to

a judgment in a fraudulent transfer action. A judgment in a fraudulent transfer action authorizes the creditor to proceed against the subject property as if the debtor still owned that property. However, the debtor's transfer, though fraudulent, still is enforceable against the debtor. *See, e.g., Doty v. Wheeler*, 120 Conn. 672, 182 A. 468, 471 (1936) ("Title gained by a fraudulent conveyance is valid as between the parties . . . ."). Thus, the New Jersey Judgment is not relevant to these proceedings (except to the limited extent noted below).

What the Debtor seeks to do here is to "reverse pierce" the "corporate veil" between himself and the LLC.[12] "Many jurisdictions recognize that the same considerations that justify piercing the corporate veil may justify piercing the veil in 'reverse.' These courts assert that the corporate disregard theory can be used both offensively and defensively." *Id. See, e.g., Cargill, Inc. v. Hedge*, 375 N.W. 2d 477 (Minn. 1985) ("reverse pierce" of corporate veil permitted to allow shareholders to claim homestead exemption in property owned by their family farming corporation). *But see id.* at 480 ("[A] reverse pierce should be permitted in only the most carefully limited circumstances."); *Fletcher, supra,* ¶ 41.70 ("However, some courts will recognize a 'reverse pierce' of the corporate veil only under very limited circumstances.").

In Connecticut, piercing the corporate (or entity) veil is governed by equitable principles. (*See Angelo Tomasso, Inc. v. Armor Constr. & Paving, Inc.*, 187 Conn. 544, 555 (1982) ("The concept of piercing the corporate veil is equitable in nature."). This court is convinced that the Connecticut courts would not pierce the veil between the Debtor and the LLC to allow the Debtor to assert ownership of the Property for his own benefit when the Debtor had placed record title to

---

[12] A "reverse pierce" treats the assets of the entity as if they were the assets of the entity's owner(s). *See, e.g.*, 1 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 41.70 (2005).

the Property in the LLC "for . . . unjust purposes" (Debtor's Exh. 3 at 2).[13]  Accordingly, the Debtor is bound by the LLC's record title to the Property as of the Fixing Date.  Since the Debtor had no cognizable interest in the Property at that time, he cannot prevail here.[14]

## IV.  CONCLUSION

For the reasons set forth above, the Motion is denied and the Objection is sustained.  It is **SO ORDERED.**

Dated: August 2, 2006                                              BY THE COURT

*Lorraine Murphy Weil*
Lorraine Murphy Weil
United States Bankruptcy Judge

---

[13]  The New Jersey Judgment would be dispositive against the Debtor on that point.

[14]  For all of the reasons set forth above, the court also is convinced that the Connecticut courts likewise would reject the Debtor's theory that, as of the Fixing Date, he had an "equitable interest" in the Property enforceable for his own benefit.  Thus, absent the subsequent deed(s) or further action by his chapter 7 trustee, the Debtor's bankruptcy estate would have had no interest in the Property either.  *Cf. MNC Commercial Corp. v. Joseph T. Ryerson & Son, Inc.*, 882 F.2d 615, 619 (2d Cir. 1989) ("Bankruptcy is mainly a procedural device . . . generally leaving undisturbed legal relationships that existed before bankruptcy . . . . Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.") (citations and internal quotation marks omitted; first modification in original).  However, if record title to the Property still were in the LLC as of the petition date and the chapter 7 trustee sought to pierce the "veil" between the Debtor and the LLC for the benefit of the Debtor's creditors, that would have been a different matter.  *See St. Paul Fire and Marine Ins. Co. v. Pepsico, Inc.*, 884 F.2d 688 (2d Cir. 1989) (cause of action to pierce veil between corporate parent and debtor subsidiary belonged to the debtor's estate (applying Ohio Law)); *Kaplan v. Gruder*, No. CV96-0334308S, 1999 WL 370629 (Conn. Super. Ct. May 19, 1999) (same result under Connecticut law).  *See also Schimmelpenninck v. Byrne (In re Schimmelpenninck)*, 183 F.3d 347, 358 n.23 (5th Cir. 1999) (doctrine of unclean hands was not applicable to bar the debtor's curators from piercing the corporate veil for the benefit of the debtor's creditors (applying Texas law)).